**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**VICTORIA BENOIT,**

   **Plaintiff,**

-vs-                Case No.: 5:19-cv-660

**CREATIVE HAIRDRESSERS, INC., d/b/a**
**HAIR CUTTERY**
a Virginia Profit Corporation, and
**RATNER COMPANIES, L.C., d/b/a**
**HAIR CUTTERY**
a Virginia Limited Liability Company

   **Defendant.**
_____/

## COMPLAINT

Plaintiff, VICTORIA BENOIT, sues Defendants, CREATIVE HAIRDRESSERS, INC. d/b/a HAIR CUTTERY, a Virginia Profit Corporation, and RATNER COMPANIES, L.C. d/b/a HAIR CUTTERY, a Virginia Limited Liability Company and alleges:

### NATURE OF CLAIMS

1. This is an action under the Family Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq., (FMLA), the Florida Civil Rights Act, Fla. Stat. § 760.01 et seq. (FCRA), and the Americans with Disabilities Act as amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12101 et seq. (ADA).

### PARTIES, JURISDICTION, AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this case presents federal questions under the FMLA and ADA. Moreover, the Court has diversity jurisdiction under 42 U.S.C. § 1332 as the parties are citizens of different statements and the amount in controversy exceeds $75,000. The Court has supplemental jurisdiction over the state-law FCRA claims under 28 U.S.C. § 1367

because the they are so related to the federal claims that they form part of the same case or controversy.

3. Plaintiff VICTORIA BENOIT (hereinafter "Benoit" or "Plaintiff"), is domiciled in Marion County, Florida.

4. Defendant, CREATIVE HAIRDRESSERS, INC. d/b/a HAIR CUTTERY (hereinafter "Creative Hairdressers") is a Virginia profit corporation with its principal place of business located Vienna, Virginia. It is duly registered with the Florida Department of State to conduct business in the State of Florida and is the owner of the fictitious name "Hair Cuttery" in Florida.

5. RATNER COMPANIES, L.C. d/b/a HAIR CUTTERY (hereinafter "Ratner Companies") is a Virginia limited liability company. It is not registered with the Florida Department of State to conduct business in the State of Florida.

6. Both Defendants are a joint and/or integrated enterprise that owns, operates, and does business as "Hair Cuttery," which Defendants claim is the "largest privately-held salon chain in North American." Both Defendants include an interrelation of operations, centralized control of labor relations, common management, and common ownership are financial control. Defendants were a "joint employer" within the meaning of 29 C.F.R. § 825.106 because they had an arrangement to share employee's services or to interchange employees, one Defendant acted directly or indirectly in the interest of the other employer in relation to Plaintiff's employment, and the employers were not completely disassociated with respect to Plaintiff's employment and shared control of Plaintiff's employment, directly or indirectly, because one Defendant is under common control of the other.

7. Both Defendants are hereinafter referred to jointly and collectively as "Hair Cuttery" of "Defendants."

8. At all times material, Hair Cuttery was a covered employer within the meaning of the FMLA and employed greater than fifty (50) employees within seventy-five (75) miles of Plaintiff's worksite. At all times material, Hair Cuttery employed fifteen (15) or more employees and is a covered

employer under the ADA and FCRA.

9. Hair Cuttery maintains continuous and systematic contacts with this jurisdiction through its ownership, operation, and management of hair salons through the State of Florida and this District.

10. Plaintiff filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC) on July 18, 2019 concerning her ADA and FCRA claims that was deemed dual-filed with the Florida Commission on Human Relations (FCHR). The EEOC issued a Right to Sue letter via mail on October 4, 2019. Plaintiff reserves the right to file an amended complaint concerning the FCRA claims upon the expiration of 180 days from the effective date of filing with that agency.

## CONDITIONS PRECEDENT

11. All conditions precedent to bringing this action have been performed, occurred, are futile, are excused, or have been waived.

## FMLA COVERAGE AND ELIGIBILITY

12. At all times material, Plaintiff worked at a work site at which fifty or more employees were employed at that site or within seventy-five miles of that work site. At all times material, Defendant was an employer under the FMLA as defined pursuant to 29 U.S.C. § 2611(4)(A).

13. At all times material, Plaintiff was employed by Defendant and was eligible for FMLA leave. Plaintiff was employed by Defendant and worked for at least 1,250 hours during the twelve-month period immediately preceding her FMLA leave requests.

## STATEMENT OF FACTS

14. Hair Cuttery is a large, privately held salon chain.

15. Plaintiff was employed by Hair Cuttery in different capacities since 1993. She began her employment as a stylist, later being promoted to assistant manager (1994), then salon leader (1995), and then district leader (around 2010). Throughout this time, Plaintiff was never the subject of

a disciplinary action or performance improvement plan during her entire tenure until after the events described below.

16. In January 2018, Plaintiff requested intermittent FMLA leave from Hair Cuttery to care for her mother who suffered from a disability and serious health condition.

17. After making the intermittent FMLA leave request in January 2018, Hair Cuttery continued to delay processing the request until March 17, 2018, whereupon Plaintiff was informed that Defendants misplaced the paperwork. During the pendency of the FMLA request, Plaintiff's supervisor, Orlando Zablan, denied multiple requests for time off for Plaintiff to care for her mother even though Zablan knew that the requests for time off were for Plaintiff to care for her mother's serious health condition. As a result, Plaintiff was dissuaded from taking the time off to care for her mother, and the delays and denials amounted to interference with Plaintiff's FMLA leave rights.

18. Around January 17, 2018, shortly after Orlando Zablan received notice of Plaintiff's FMLA request to care for her mother, Zablan and confronted Plaintiff and asked why Plaintiff applied for FMLA. Plaintiff explained that she applied because Zablan customarily refused to take time off to care for her mother. The ensuing conversation made it clear that Zablan wanted Plaintiff to place her commitment to working for Defendants above that of caring for her mother, even if Plaintiff was legally entitled to take leave for that purpose.

19. Shortly after the above meeting with Zablan, Defendants directed staff to meet with Plaintiff to try and dig up dirt on Plaintiff to create a pretextual reason to discipline and/or terminate Plaintiff.

20. Within a couple of months of her January 2018 FMLA request, Plaintiff was placed on a performance improvement plan for the first time after decades of working with the company.

21. In June 2018, Plaintiff's own disability and serious health condition (vestibular migraines and related conditions) worsened and caused a period of incapacity. Plaintiff's disability

causes significant limitations on her ability to sit, stand, see, hear, think, focus, speak, read, write, and generally interact with others, especially during periods of incapacity.

22. After experiencing a worsening of disability and serious health condition symptoms in June 2018, Plaintiff applied for continuous FMLA leave with Hair Cuttery on the basis of her disability and serious health condition. This request was approved almost immediately after Plaintiff emailed the FMLA request paperwork.

23. When Plaintiff returned from her leave on or around September 21, 2018, her supervisor—Orlando Zablan—told her to meet him at Defendants' Silver Springs/Ocala office. When Plaintiff arrived, Zablan was in Gainesville, and Plaintiff waited for Zablan to arrive at the Silver Springs/Ocala office. When Zablan arrived, he terminated Plaintiff for the stated reason that Plaintiff did not turn in "SDV form" while she was on leave.

24. Hair Cuttery terminated Plaintiff in interference with her FMLA rights, including the right to reinstatement to the same or an equivalent position and to not be terminated for taking or requesting FMLA leave; in retaliation for asserting or attempting to assert rights under the FMLA; in violation of the ADA and FCRA because she is disabled and because of her association with a disabled person (her mother); and in retaliation for making reasonable requests for accommodation for her own disability under the ADA and FCRA.

25. In a document titled "Conference Report Form" dated Sept. 24, 2018 that was mailed to Plaintiff, Hair Cuttery outlined pretextual reasons for Plaintiff's termination that were intended to cover up the real reasons identified in the above Paragraph.

### COUNT I - Family Medical Leave Act
### (Interference with Plaintiff's exercise of FMLA Rights)

26. Plaintiff incorporates by references Paragraph 1 – 25 as if fully stated herein.

27. Each Defendant is an employer covered by the Family Medical Leave Act pursuant

to 29 C.F.R. § 825.104(a) and/or both Defendants are a joint employer and/or integrated employer as set forth in this Complaint.

28.  Plaintiff was entitled to leave under the Family Medical Leave Act, pursuant to 29 U.S.C. § 2601, and was eligible for protected leave under 29 C.F.R. § 825.110.

29.  Plaintiff qualified for medical leave due to her essential commitment to care for an immediate family member with a serious health condition under 29 C.F.R. § 825.100(a). The family member's medical condition further meets the definition of a "chronic Serious Health Condition" per C.F.R. § 825.115(c) because it required periodic visits with health care providers and continued over an extended period of time.

30.  Defendants were provided with sufficient notice, under 29 C.F.R. § 825.302(a), of Plaintiff's intent to take leave to care for her mother.

31.  Within months of making her FMLA request to care for her mother, Defendants placed Plaintiff on a performance improvement plan for the first time in her decades-long career with Defendants.

32.  Defendants' supervisor repeatedly denied Plaintiff's requests for time off to care for her mother for FMLA-protected reasons.

33.  Plaintiff additionally requested time off for her own disability and serious health condition on or around June 28, 2018. The leave was "granted," but instead of being reinstated to the same or equivalent position, she was terminated the day she returned to work.

34.  Defendants interfered with Plaintiff's right to FMLA leave by:

- denying her requests for time off to care for her mother;
- delaying processing of Plaintiff's FMLA request regarding care for her mother to the point where the request was effectively denied and Plaintiff could not take authorized time off;

- failing to adjust performance standards to avoid penalizing Plaintiff for the time she was absent on FMLA leave;
- failing to reinstate Plaintiff to the same or equivalent position upon the conclusion of FMLA leave;
- placing Plaintiff on a performance improvement plan after she made requests for FMLA leave; and
- terminating Plaintiff for requesting and taking FMLA leave.

35. As a result of Defendants' interference, Plaintiff has been damaged.

36. Defendants' interference was willful; Defendants' conduct regarding Plaintiff's FMLA rights were objectively unreasonable per 29 U.S.C. § 2617 (a)(1)(A)(iii), which authorizes liquidated damages under such circumstances.

## COUNT II - FAMILY MEDICAL LEAVE ACT
### (FMLA Retaliation)

37. Plaintiff incorporates by reference paragraphs 1 – 36 as if fully stated herein.

38. Plaintiff engaged in activity protected by the Family Medical Leave Act, pursuant to 29 U.S.C. § 2601.

39. Plaintiff engaged in protected activity when she attempted to take leave to care for an immediate family member and to care for her own medical condition.

40. Plaintiff suffered adverse acts when her requests for leave were denied by her supervisor, when she was placed on a performance improvement plan, and when she was terminated from employment.

41. Plaintiff's subjection to a performance improvement plan, denial of requests for leave, and termination were causally connected to her availment of a right under the Family Medical Leave Act.

42. Plaintiff has suffered damages as a result of the retaliation.

43. Defendants' retaliation was willful; furthermore, Defendant's decision to terminate Plaintiff due to her availment of a right under the FMLA was objectively unreasonable per 29 U.S.C. § 2617(a)(1)(A)(iii), which authorizes liquidated damages under such circumstances.

### COUNT III – AMERICANS WITH DISABILITIES ACT
### (ADA –  Disability Discrimination)

44. Plaintiff incorporates by reference paragraphs 1 – 25 as if fully stated herein.

45. At all times material Plaintiff was a qualified individual with a disability pursuant to 42 U.S.C. § 12111(8).

46. At all relevant times, Plaintiff was qualified as "disabled" pursuant to the ADA because she was actually impaired as described 42 U.S.C. § 12102(1)(A).

47. At all relevant times, Plaintiff was qualified as "disabled" pursuant to the ADA because she had a record of disability impairment as described 42 U.S.C. § 12102(1)(B).

48. At all relevant times, Plaintiff was qualified as "disabled" pursuant to the ADA because she was regarded by Defendants as having a disability impairment as described in 42 U.S.C. § 12102(1)(C).

49. At all relevant times, Plaintiff was known by Defendants to be closely associated with a person (her mother) who is "disabled" within the meaning of the ADA. Defendants perceived Plaintiff's mother as having a disability impairment as described in 42 U.S.C. § 12102(1)(C).

50. Defendants stereotyped Plaintiff based on her close association with a disabled person (her mother) to assume that she would require additional leave in the future to care for her disabled mother.

51. Within months of requesting leave to care for her disabled mother around January 2018, Plaintiff was placed on a performance improvement plan by Defendants as an adverse act against Plaintiff.

52. Plaintiff's supervisor repeatedly denied Plaintiff's requests for time off to care for her mother in violation of her federally protected rights as an adverse act against Plaintiff.

53. Defendants set about creating a performance improvement plan to attempt to set Plaintiff up for termination based on her close association with a disabled person.

54. In June 2018, Plaintiff requested an accommodation of leave to treat her own disability condition.

55. At all relevant times, Plaintiff was qualified to perform the essential duties of the position with the requested reasonable accommodation.

56. All accommodations that Plaintiff requested were reasonable.

57. None of the accommodations that Plaintiff requested would have created undue hardship for Defendants.

58. Although Defendants granted the accommodation to the extent that she was permitted the time off, Defendants unreasonably refused the accommodation to the extent that they unreasonably refused to allow Plaintiff to return to work and perform her job and instead fired her for pretextual reasons.

59. Defendants' act of terminating Plaintiff for sham pretextual reasons was an adverse act.

60. Defendants discriminated against Plaintiff in violation of the ADA.

61. Defendants knowingly and intentionally discriminated against Plaintiff because of her disability, her record of a disability, the perception of a disability, and/or her close association with a disabled person.

62. Defendants are liable for the acts and omissions of its agents and employees.

63. Plaintiff suffered injuries as a result of Defendants' adverse acts.

64. Defendants' adverse acts were the direct and proximate cause of Plaintiff's injuries, damages, and losses.

65. Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights under the ADA when they committed adverse acts against Plaintiff.

### COUNT IV – AMERICANS WITH DISABILITIES ACT
### (ADA – Disability Discrimination – Failure to Accommodate)

66. Plaintiff incorporates by reference paragraphs 1 – 25 and 44 – 65 as if fully stated herein.

67. In June 2018, Plaintiff requested an accommodation of leave to treat her own disability condition.

68. At all relevant times, Plaintiff was qualified to perform the essential duties of the position with the requested reasonable accommodation.

69. All accommodations that Plaintiff requested were reasonable.

70. None of the accommodations that Plaintiff requested would have created undue hardship for Defendants.

71. Although Defendants granted the accommodation to the extent that she was permitted the time off, Defendants unreasonably refused the accommodation to the extent that it

unreasonably refused to allow Plaintiff to return to work and perform her job and instead fired her for pretextual reasons.

72. Defendant discriminated against Plaintiff in violation of the ADA by refusing to accommodate her disability.

73. Defendant knowingly and intentionally discriminated against Plaintiff because of her disability, her record of a disability, and/or the perception of a disability.

74. Defendant is liable for the acts and omissions of its agents and employees.

75. Plaintiff suffered injuries, damages, and losses as a result of Defendants' failure to reasonably accommodate her disability.

76. Defendants' failure to accommodate Plaintiff's disability was the direct and proximate cause of Plaintiff's injuries, damages, and losses.

77. Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights under the ADA when they refused to provide a reasonable accommodation for her disability.

### COUNT V– Americans with Disabilities Act
### (ADA – Retaliation)

78. Plaintiff incorporates by reference Paragraphs 1 – 25 and 44 – 77 as if fully stated herein.

79. Plaintiff engaged in protected activity when she asked Defendants for reasonable accommodations for her disability.

80. As a direct result of Plaintiff's request for a reasonable accommodation, Defendants retaliated against Plaintiff by terminating her employment for sham pretextual reasons.

81. Defendants treated Plaintiff less favorably than her similarly situated counterparts who did not engage in protected activity.

82. Defendants are liable for the acts and omissions of its agents and employees. Defendants, either directly or by and through its agents, retaliated against Plaintiff and caused her injuries, damages, and losses.

83. Plaintiff suffered injuries as a result of Defendants' retaliatory conduct.

84. Defendants' retaliatory conduct was the direct and proximate cause of Plaintiff's injuries, damages, and losses.

85. Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights under the ADA.

## **FLORIDA CIVIL RIGHTS ACT CLAIMS**

Plaintiff intends to amend this Complaint to include Florida Civil Rights Act claims based on the same facts as the ADA claims asserted above upon the conclusion of the 180- period following the filing of her charge of discrimination, which was dual-filed with the Florida Commission on Human Relations.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor against Defendants, and grant:

a) Appropriate declaratory and other injunctive and/or equitable relief;

b) Compensatory and consequential damages, including damages for mental anguish and emotional distress, including but not limited to depression, loss of dignity, humiliation, embarrassment, stress, anxiety, loss of self-esteem and self-confidence, emotional pain, and other intangible injuries on all claims allowed by law in an amount to be determined at trial;

c) All economic losses on all claims allowed by law;

d) Liquidated damages doubling the award of interest, wages and employment benefits, and other compensation lost to Plaintiff;

e) Punitive damages on all claims allowed by law in an amount to be determined at trial;

f) Pre- and post-judgment interest at the lawful rate;

g) Attorney's fees and costs of suit;

h) Any further relief that this court deems just and proper, and any other relief as allowed by law.

## **DEMAND FOR A JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED,

By: */s/ Brian Calciano*
Brian Calciano, Esquire
Fla. Bar No. 0108879
Brian Calciano, P.A.
146 2nd St. N., Ste. 310-DD
St. Petersburg, FL 33701
Tel: (727) 202-4516
Email: brian@flemploymentlaw.com
Attorney for Plaintiff